1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS
2

3    _____

     UNITED STATES OF AMERICA,
4                        Plaintiff,

5    V.                            Criminal Action No. 04-10260-RCL

6    CARLOS HOWELL,                February 13, 2006, 2:24 p.m.
                         Defendant.  Boston, Massachusetts
7    _____

8

9

10

11

12           TRANSCRIPT OF SENTENCING OF CARLOS HOWELL

13          BEFORE THE HONORABLE REGINALD C. LINDSAY

14                UNITED STATES DISTRICT COURT

15              JOHN J. MOAKLEY U.S. COURTHOUSE

16                     1 COURTHOUSE WAY

17                    BOSTON, MA  02210

18

19

20

21

22               DEBRA M. JOYCE, RMR, CRR
                   Official Court Reporter
23            John J. Moakley U.S. Courthouse
              1 Courthouse Way, Room 5204
24                Boston, MA  02210
                      617-737-4410
25

```
1    APPEARANCES:

2    FOR THE GOVERNMENT:

3    THEODORE B. HEINRICH, ESQ.
     Assistant United States Attorney
4    Office of the United States Attorney
     John J. Moakley U.S. Courthouse
5    1 Courthouse Way, Suite 9200
     Boston, MA  02210
6    617-748-3100

7
     FOR THE DEFENDANT:
8
     WALTER H. UNDERHILL, ESQ.
9    Law Office of Walter H. Underhill
     66 Long Wharf
10   4th Floor
     Boston, MA  02110
11   617-523-5858

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2              (The following proceedings were held in open court
 3    before the Honorable Reginald C. Lindsay, United States
 4    District Judge, United States District Court, District of
 5    Massachusetts, at the John J. Moakley United States Courthouse,
 6    1 Courthouse Way, Boston, Massachusetts, on February 13, 2006.
 7              The defendant, Carlos Howell, is present with
 8    counsel.  The Assistant United States Attorney is present.)
 9              THE CLERK:  Criminal action 04-10260, United States
10    v. Carlos Howell.
11              Counsel, please state your name for the record.
12              MR. HEINRICH:  Good afternoon, your Honor.  Ted
13    Heinrich for the government.
14              MR. UNDERHILL:  Good afternoon, your Honor.  Walter
15    Underhill for the defendant, Carlos Howell.
16              THE COURT:  Good afternoon.  We're here this
17    afternoon for the disposition of the matter of United States v.
18    Carlos Howell, who pleaded guilty on June 6th of last year to
19    distribution of cocaine base in violation of Title 21 United
20    States Code section 841(a)(1).
21              Mr. Heinrich, have you reviewed the presentence
22    report?
23              MR. HEINRICH:  Yes, your Honor.
24              THE COURT:  Mr. Underhill, have you had a chance to
25    review the report yourself and review it with Mr. Howell?
```

1          MR. UNDERHILL:  I have, your Honor, reviewed it

2     several times and Mr. Howell has had a copy of it.  We've gone

3     over it on several occasions.  Objections have been filed.  And

4     with the exception of one general characterization that I would

5     address during my presentation to the Court, other than the

6     objections, we don't have any disagreement with the presentence

7     report.

8          THE COURT:  All right.  Well, I am going to go

9     through the parts of the report, and at the point at which you

10    have objections, please state what they are.

11         MR. UNDERHILL:  Thank you, your Honor.

12         THE COURT:  All right.  I start with the offense

13    level calculation.  The guidelines have been determined in this

14    case by reference to the manual issued on November 1, 2004.  On

15    the basis of that manual, and because the defendant is being

16    held accountable for 27.4 grams of cocaine base, the base

17    offense level is pegged at 28.  There's been a three-level

18    adjustment for acceptance of responsibility, and the total

19    offense level before the application of career offender

20    provisions is level 25.  The probation officer has determined,

21    however, that Mr. Howell qualifies for the career offender

22    enhancement, which brings his unadjusted offense level to level

23    34.  And with three levels of acceptance of responsibility, he

24    is placed in level 31.

25         I think you have an objection to the career

1    offender.

2              MR. UNDERHILL:  That's correct, your Honor.  I

3    stated two objections to the career offender.

4              THE COURT:  All right.  Before I take your

5    objections, let me go to the Criminal History Category, then

6    I'll hear you with respect to both.

7              (Pause.)

8              THE COURT:  All right.  This defendant is in

9    Criminal History Category VI.  This is solely because of the

10   career offender?

11             PROBATION OFFICER:  That's right, your Honor.

12   Otherwise, he would be in Category V.

13             THE COURT:  Okay.  He has total criminal history

14   score of 11, but because of the career offender provisions, he

15   is in Criminal History Category VI.

16             Mr. Underhill, you have objections?

17             MR. UNDERHILL:  Yes, your Honor.  I -- if it please

18   the Court.  I had filed two objections when the report was

19   first issued, and they were based upon the quality of the

20   evidence of those convictions.  And I don't have anything to

21   add to the arguments I made in the -- in my objections to the

22   presentence report.  I will say, however, as to the objection

23   to the Dorchester District Court, possession with intention to

24   distribute --

25             THE COURT:  Well, is this the --

PDF created with pdfFactory trial version www.pdffactory.com

1              MR. UNDERHILL:  Do you want me to do it by number?

2              THE COURT:  That's not the one in paragraph 42, is

3      it?

4              MR. UNDERHILL:  One moment, your Honor.

5              THE COURT:  Because that's an A and B.

6              MR. UNDERHILL:  No.  It's the paragraph 47 and --

7              THE COURT:  Forty-seven.  Okay.

8              MR. UNDERHILL:  I just want -- I'm actually

9      starting backwards, your Honor.

10              I have had an opportunity to review -- one of the

11      problems when I filed this objection was both probation and I

12      were having difficulty getting docket sheets from the various

13      courts.  The Dorchester District Court docket sheet on that

14      particular charge has been obtained by probation.  I reviewed

15      it.  It was the defendant's understanding and position that he

16      had pled guilty to mere possession, not possession with intent

17      to distribute.  The docket sheet, however, reflects that he was

18      originally charged with possession with intent to distribute

19      and -- in a school zone.

20              THE COURT:  It's a school zone that's on the record

21      I have.

22              MR. UNDERHILL:  Well, no, the school zone was

23      dismissed.

24              THE COURT:  Oh, yes, I guess that's right.  Yes.

25              MR. UNDERHILL:  But what Mr. Howell understood and

1    still believes today is that it was his understanding that the

2    possession with intent to distribute was actually reduced to

3    mere possession.  However, that is not reflected in the docket

4    sheet, and I must, you know, state to the Court without giving

5    up the objection -- and I'd ask the Court to rule on the

6    objection -- that it seems that the docket sheet rules.  And he

7    may have been under a misapprehension, he may have been

8    misinformed.

9            THE COURT:  Did you look for the tape that

10    reflects --

11            MR. UNDERHILL:  The tape wouldn't have been -- I

12    didn't, your Honor, because I believe the tapes -- my

13    understanding of the way the tapes work is that after two

14    years, the tapes are gone.

15            THE COURT:  Okay.

16            MR. UNDERHILL:  There's no tapes.  I mean, I can't

17    say that I made a request and it's been denied, but I've done

18    enough work in the district courts --

19            THE COURT:  To know that after two years you don't

20    have a tape.

21            MR. UNDERHILL:  You don't get the tape.

22            So that is -- still, that is his position.  Again,

23    the docket sheet does not reflect that.

24            I've been in Dorchester District Court enough over

25    the course of my career -- I'm not there on a regular basis --

PDF created with pdfFactory trial version www.pdffactory.com

1  but it's an extremely busy, busy court.  Things are done in a

2  very, very hasty and sometimes not as thorough a manner as one

3  might expect in other venues.

4        THE COURT:  I should tell you before you go on my

5  cousin works in the clerk's office over there.

6        MR. UNDERHILL:  I'll tell you, I don't know who

7  your cousin is, but the clerk's office has always been very

8  nice to me.  It wouldn't have been the clerk's fault.

9        THE COURT:  Okay.

10       MR. UNDERHILL:  It wouldn't have been anybody's

11 fault.  What I'm suggesting is with the rapidity -- and I have

12 also been responsible -- with the rapidity of what happens at a

13 very, very high-volume court, there may have been a

14 misunderstanding along the way.

15       The facts of that case, according to the defendant,

16 and I don't believe -- and Ms. Foster, if I could -- you don't

17 have the police report in the case, do you?

18       PROBATION OFFICER:  No, I don't.

19       MR. UNDERHILL:  Okay.  The defendant would ask me

20 to represent to the Court that he has, and he's told probation

21 this, he has a marijuana -- he's a marijuana user, he's an

22 alcoholic and heavy marijuana user.

23       In the City of Boston, it's always been my

24 understanding -- I don't think there's any one place you can

25 stand that's not within a thousand feet of a school zone,

PDF created with pdfFactory trial version www.pdffactory.com

1    especially in that area.  So he was in a playground with his

2    son, and he had ten bags of marijuana, which he -- which he

3    maintains was for his personal use.  He was arrested, he was

4    with his son; it wasn't a sale to another person, it wasn't an

5    undercover sale.

6              Mr. Howell may be many things based upon a thorough

7    review of his criminal record, but I suggest overall he's not a

8    drug dealer.

9              But sticking with the objection --

10             THE COURT:  Well, before you go on to the

11   objection, aren't there -- even if we resolve this objection,

12   aren't there enough predicates for the career offender anyway?

13             PROBATION OFFICER:  He has just two predicates,

14   your Honor.

15             THE COURT:  So this is one of the two.

16             PROBATION OFFICER:  Yes.

17             MR. UNDERHILL:  Believe it or not.

18             THE COURT:  Sorry.

19             MR. UNDERHILL:  In going through, it is -- now, the

20   other objection --

21             THE COURT:  Well, I interrupted you because you

22   said sticking with this objection --

23             MR. UNDERHILL:  Well, I was getting back to the

24   technical aspects of the objection.  I'm not going to withdraw

25   it.  I'm going to ask you to rule on it.  I've made my

PDF created with pdfFactory trial version www.pdffactory.com

1    representations.  All I'm saying to you is in all good faith

2    and fairness, I must state that the docket sheet does not

3    reflect Mr. Howell's understanding, but he stands by what his

4    understanding was.

5              THE COURT:  Okay.

6              MR. UNDERHILL:  As to the other --

7              THE COURT:  Which is the other, is that the other

8    one that's in --

9              MR. UNDERHILL:  There are two --

10             THE COURT:  Forty-two?

11             MR. UNDERHILL:  It is 42.  That's the assault and

12   battery.

13             THE COURT:  Yes.

14             MR. UNDERHILL:  Again, your Honor, I'm not going to

15   withdraw the objection.  It may sound specious, but it's so

16   important that -- I've looked at the complaints.  The

17   complaints out of Dorchester specifically state that what is

18   stated here by probation that Mr. Howell did assault and beat a

19   Keith Baker.  The case was not disposed of in Dorchester

20   District Court.  It was disposed of in the BMC.  I'd ask you to

21   review those docket sheets again, and I'm not trying to be

22   facetious here.  I'm not going to withdraw the objection.

23   There may be enough ambiguity with the way it was handled that

24   Shepard may apply in this particular case.  I'm not going to

25   argue against myself on that.

```
 1              THE COURT:  Why would Shepard apply?  Because the

 2    docket sheet says A and B with a dangerous weapon.

 3              MR. UNDERHILL:  Right.  Do you have the docket

 4    sheets in front of you, your Honor?

 5              THE COURT:  The docket sheets, no.

 6              MR. UNDERHILL:  I think probation does.  What

 7    happens is -- that's correct.  The docket sheets out of

 8    Dorchester say that.  The case was disposed of in the Boston

 9    Municipal Court.

10              I guess my --

11              THE COURT:  Well, how is this --

12              MR. UNDERHILL:  -- far reaching point is that it is

13    not completely clear as to what it ultimately was disposed of

14    as in the BMC.

15              THE COURT:  What do you know about the disposition

16    in the Boston Municipal Court?

17              PROBATION OFFICER:  I know that it was originally

18    charged as A and B, a threat and A and BDW, and it was carried

19    over to the Boston Municipal Court as exactly those charges,

20    and it is reflected in the BMC docket.

21              THE COURT:  Is there something in the BMC docket

22    that is not reflected here?

23              PROBATION OFFICER:  No, your Honor.

24              MR. UNDERHILL:  Again, I'd ask you to look at them,

25    your Honor.
```

```
 1                    THE COURT:  Do you have them?

 2                    PROBATION OFFICER:  I do.

 3                    MR. UNDERHILL:  I think if Ms. Foster, if she would

 4     point it out for me, that would sufficiently allow you to make

 5     your decision.

 6                    (Discussion off the record.)

 7                    THE COURT:  What is it you want me to look at this?

 8                    MR. UNDERHILL:   Your Honor, I wanted you to look

 9     at --

10                    THE COURT:  Let me just interrupt you.  Because I

11     see on this docket sheet from Boston Municipal Court, what's

12     reflected in paragraph 42 of the PSR, assault and battery, and

13     assault and battery, assault by dangerous weapon.  The same

14     thing is reflected.

15                    So what is it you want me to know?

16                    MR. UNDERHILL:  I guess on the BMC docket sheets

17     themselves, they're generic, they're not as specific as the

18     docket sheets out of Dorchester.

19                    THE COURT:  Okay.  But I see on the BMC docket

20     sheet --

21                    MR. UNDERHILL:  You'll see in the reference point.

22                    THE COURT:  I'm sorry.

23                    MR. UNDERHILL:  You're seeing the reference

24     numbers.

25                    THE COURT:  Tell me what you want me to see.  I see
```

1   894359.  And the offense listed is assault by dangerous weapon.

2          MR. UNDERHILL:  Hm-hmm.

3          THE COURT:  And what is it you want me to see?

4          MR. UNDERHILL:  If it's assault -- in other words,

5   if it's just assault by dangerous weapon, my argument would be

6   that's a generic.  That's generic.

7          THE COURT:  Is it?

8          MR. UNDERHILL:  If, in fact, you either incorporate

9   the Dorchester District Court complaints, it is not generic, it

10  is more specific.

11         THE COURT:  Well, there's somewhere -- maybe this

12  is a police report and I should look at it, because I saw .38

13  caliber -- I'm looking -- I guess I'm looking at a complaint

14  that says something about a .38 caliber weapon.  Am I wrong to

15  look at that?  It has that same number, 894359.

16         MR. UNDERHILL:  Is it a police report or is it --

17         THE COURT:  Well, I'm looking at what looks like --

18  it's a complaint, it says.

19         MR. UNDERHILL:  Is that the BMC complaint?

20         PROBATION OFFICER:  It's a criminal complaint

21  originated in the Dorchester District Court, which the Boston

22  Municipal basis their charges on.

23         MR. UNDERHILL:  That's --

24         THE COURT:  Okay.  I see.  The point of the matter

25  is, it seems to me this case originated in Dorchester, somehow

PDF created with pdfFactory trial version www.pdffactory.com

```
 1    got to the Boston Municipal Court -- maybe the whole thing is
 2    in Boston Municipal Court --
 3                    MR. UNDERHILL:  I'm sorry.
 4                    THE COURT:  Isn't the whole thing called the Boston
 5    Municipal?
 6                    MR. UNDERHILL:  It's under the aegis of the Boston,
 7    now your jury cases are in Dorchester.
 8                    THE COURT:  But in any case, if I look at these two
 9    documents, 894359, and to those of the BMC jury session, I
10    don't know whether that was in Dorchester or downtown --
11                    MR. UNDERHILL:  That would have been downtown.
12                    THE COURT:  In any case, it says assault by
13    dangerous weapon, the number is 894359.  The number in
14    Dorchester was 894359, and in the complaint there is a
15    reference to a .38 caliber weapon.  So it seems to me that if I
16    don't look -- if I look not -- if I look no further as -- if
17    I'm limited, as I am, by Shepard to looking at the charging
18    document, I see the weapon.
19                    Okay.  Your point is that maybe there's a
20    difference, but I see it -- I don't see the difference
21    you're -- I see what you're saying, but I don't see the
22    difference.
23                    MR. UNDERHILL:  Thank you, your Honor.
24                    THE COURT:  Okay.  All right.  Is there anything
25    else?
```

 1              MR. UNDERHILL:  No, your Honor, I think that's it
 2    from me.
 3              THE COURT:  All right.  I think I'm satisfied that
 4    the two predicate offenses to which there have been objections
 5    are appropriately counted, and I determine that Mr. Howell is a
 6    career offender and that his offense level is 31 and his
 7    Criminal History Category is VI.
 8              Mr. Heinrich, you want to make a recommendation to
 9    me?
10              MR. HEINRICH:  Your Honor, generally speaking, the
11    government's recommendation is that the Court impose a sentence
12    within the applicable guideline range.  Here that would be a
13    sentence of 188 months.  I don't think that a sentence of
14    higher is necessary to achieve the purposes of sentencing.
15              THE COURT:  Can you speak a little louder into that
16    microphone?
17              MR. HEINRICH:  I can.  The government recommends a
18    sentence of 188 months, the lower end of the guideline range
19    based on the facts and circumstances of the offense and the
20    defendant's criminal history.
21              The interesting thing -- I mean, if the Court --
22    well, if the career offender provision had not been applicable,
23    the guideline range would have been 100 to 125 months.  The
24    interesting thing is that the non-career offender predicates
25    are somewhat more serious than the career offender predicates.

1           I mean in, '86 there was larceny from a person and

2    carrying a dangerous person.  In 1987, assault and battery,

3    unarmed robbery.  In 1989, possession of a firearm.  Then '89

4    the assault and battery, which we discussed.  1990, possession

5    of a class D controlled substance.  '91, a second possession of

6    a firearm.  1992, a third possession of a firearm.  1996, more

7    marijuana.  2000, the possession to distribute marijuana.  And

8    then 2004, a disorderly conduct.  And now this federal offense,

9    which is distribution of an ounce of crack cocaine.

10          If the Court were to consider an alternative

11   sentence, the government's recommendation would be that it look

12   at that non-career offender guideline from 100 to 125 months

13   and go to the top of that range, or 120 months, a ten-year

14   sentence, again, based on all the facts and circumstances

15   relating to the offense of conviction and the defendant's

16   progression in his criminal history.

17              THE COURT:  Thank you, Mr. Heinrich.

18              MR. HEINRICH:  Thank you, your Honor.

19              THE COURT:  Mr. Underhill.

20              MR. UNDERHILL:  Your Honor, on behalf of

21   Mr. Howell, I'm not going to reiterate everything that has been

22   stated in the presentence report.  Ms. Foster did a very

23   thorough background on Mr. Howell.  I was present during the

24   interview, and Mr. Howell has had a very, very difficult time

25   in his life.  He's had a very, very difficult upbringing, as is

PDF created with pdfFactory trial version www.pdffactory.com

1    accurately reflected in the report.  He's had a very limited

2    education, very difficult family life, father who died of

3    aids.  And quite frankly, a complete lack of any role model

4    that would lead him in a direction that might have caused him

5    to pursue a life that did not have all of these violations and

6    this misconduct.

7              His record is what his record is.  There's no doubt

8    about it.  But what he's charged with in this case, and one of

9    the things that bothered me about this case that I really want

10   to get into, and I hope that I'm not missing the target here,

11   is the nature of the case.

12             Mr. Howell -- and I believe him when he says this:

13   He is not a drug dealer, okay?  And I don't think he's a crack

14   dealer.  And if you look at the facts of this case, as I

15   understand it, both from reading the discovery, listening to my

16   client, corroborating some of it from the discovery that I

17   received from the government, Mr. Howell was, and I would

18   suggest to the Court, targeted in this case to get to another

19   individual who's mentioned in the presentence report by the

20   name of Husie Joyner.  Husie Joyner was a high-profile

21   individual in the community which Mr. Howell lived in that the

22   federal government, state government wanted to take off the

23   streets.  They have since done that.  But unfortunately for

24   Mr. Howell, not with his assistance to the United States

25   government.

PDF created with pdfFactory trial version www.pdffactory.com

```
 1          Now, Mr. Howell, according to the presentence
 2   report, has two children.  One of the children has a mother by
 3   the name of La Sonia Reynolds.
 4          Now, in this particular case, the confidential
 5   witness, the confidential informant, there was no -- it was not
 6   some stranger that met up with Mr. Howell and wanted to get an
 7   ounce of cocaine.  It was a woman who was a friend of La Sonia
 8   Reynolds, who, for all intents and purposes, was pretty much at
 9   the time Mr. Howell's common-law wife; and actually, La Sonia
10   Reynolds transacted, unbeknownst to Mr. Howell, an ounce of
11   cocaine with this Cynthia Morissette slash Slaten; I think her
12   married name is Slaten.
13          That was unbeknownst to Mr. Howell.  I became aware
14   of that after I became Mr. Howell's attorney.  She never got
15   arrested.  She never had charges brought against her.
16          Now, I think it was the effort of both Ms. Reynolds
17   and Ms. Morissette, if I may call her that, Morissette slash
18   Slaten, that wanted Mr. Howell to make a purchase or arrange a
19   purchase from Husie Joyner.
20          I listened to the tapes.  The tapes are very, very
21   difficult, but she came to him and she said she was in trouble,
22   she needed help -- I'm not suggesting this is a good thing, to
23   help someone in trouble -- she needed to make money to hire a
24   lawyer in a criminal case that was being brought against her.
25   Mr. Howell's not a drug dealer; he did help her.  He never made
```

PDF created with pdfFactory trial version www.pdffactory.com

1    the purchase or he never arranged the purchase from Husie

2    Joyner.  It was a third person who never ended up identified,

3    and Mr. Howell is here to take his punishment as a

4    non-cooperating witness.

5         Mr. Joyner has a very, very bad reputation in the

6    community from my understanding, a dangerous person.

7    Mr. Howell did not want to put himself or his family into

8    danger.  He's going to suffer the consequences for that because

9    there's no 5K1.

10        The presentence report -- and I just picked up on

11   it recently in the government's version -- says it was

12   discovered that Mr. Howell was a broker for Husie Joyner's

13   crack business.  None of the discovery or none of the evidence

14   that I was provided corroborates that.  I suggest to this Court

15   that what he was a victim of is a one-time deal only.  I'm sure

16   he knew Husie Joyner, and I'm sure he knew his reputation, as

17   anyone would in the community.  I think we all understand

18   that.  But the fact of the matter is, with his criminal record,

19   I am sure that the government felt that they had sufficient

20   power to put him in a vice that would help their case.  He

21   chose not to take that route.  I'm not suggesting he should be

22   rewarded for that.

23        But on the other hand, your Honor, I ask this Court

24   to look at the 3553 -- the 3553 factors, section a.  It

25   really -- the sentence of 188 months for Mr. Howell, I believe

PDF created with pdfFactory trial version www.pdffactory.com

1   in this case, is inappropriate.  I'm not suggesting that he's a

2   newcomer to the criminal justice system, but I think that,

3   quite frankly, giving him a sentence to that extent essentially

4   shuts his life down.

5            I honestly believe, Judge, that in my discussions

6   with Mr. Howell, Mr. Howell felt and always felt that he was

7   entrapped in this case.  And I honestly believe that had this

8   case gone to trial, I would have at least got the instruction.

9   I'm not suggesting I would have got the acquittal, but I firmly

10  believe, and I represent to this Court as an officer of this

11  court, that I firmly believe the evidence would have got me the

12  instruction.

13           That's a hurdle that one has to at least

14  demonstrate, because I lost one recently two weeks ago because

15  I didn't get the instruction.

16           I felt truly there was enough evidence to get that

17  instruction after the research of the law.

18           I would ask your Honor not to -- your Honor, not --

19  to make him a career offender in this case, to sentence him as

20  a career offender is wrong in totality of the circumstances.

21  And I would ask the Court to impose a sentence a little bit

22  below level 25 Category V, and I would ask the Court to go down

23  to a level 23 Category V and sentence him to between one -- 84

24  and 105 months.  I think that's the appropriate sentence under

25  3553(a).  I think it meets all the criteria of the statute and

PDF created with pdfFactory trial version www.pdffactory.com

1    it's a sentence that is not greater than necessary in order to

2    achieve all of the purposes of the statute.  And that really is

3    where we're at with sentencing today.  And I ask your Honor to

4    impose that sentence as I have just suggested.

5                    THE COURT:  All right.  Thank you, Mr. Underhill.

6                    Mr. Howell, is there anything you'd like to tell

7    me?

8                    THE DEFENDANT:  Yes.  I just want to apologize to

9    the Court for having to deal with me today on account of a bad

10    choice I made.  I was wrong.  I should never have got involved

11    in this situation.  I was used, but I'm not a drug dealer, your

12    Honor.  This is something that I'm not.  I know I've done many

13    things in my past, but I didn't -- I was used.  I just want to

14    apologize.  I'm sorry.

15                    THE COURT:  All right.  Thank you very much.

16                    Mr. Heinrich, do you see any reason why I should

17    not impose sentence at this time?

18                    MR. HEINRICH:  No, your Honor.

19                    THE COURT:  Mr. Underhill?

20                    MR. UNDERHILL:  No I don't, your Honor.

21                    (Pause.)

22                    THE COURT:  Would you stand please, Mr. Howell?

23                    I looked through the presentence report to see if

24    there was something -- some factor in it of redemption from the

25    career offender category.  I understand that this may be a

PDF created with pdfFactory trial version www.pdffactory.com

1    close question about the nature of this offense, Mr. Underhill,

2    but there has been a plea to it, and the government satisfied

3    me at the time that if the case were to go to trial, the

4    government had a case that established the elements of this

5    offense.

6              I've always been one who has not been shy, as many

7    judges have, stating that our belief that the cocaine base

8    guidelines are severe, too severe.  But as I look through this

9    record, Mr. Heinrich invited me to look through the record of

10   the non-predicate offenses for Mr. Howell to determine whether

11   there was something there that -- he's suggesting if I went

12   looking for a sentence outside the guideline, I look at the

13   non-predicate offenses to see how I should sentence outside the

14   guideline, and he, Mr. Heinrich, is correct that the

15   non-predicate offenses in some ways are more severe.

16             Mr. Howell started his criminal path at age 14, and

17   this record shows a number of firearms convictions, and there

18   is nothing, it seems to me, in this record that speaks to me of

19   a non-guideline sentence.  And so the sentence I impose will be

20   a guideline sentence.

21             Mr. Howell, it's the judgment of the Court that you

22   be committed to the custody of the Bureau of Prisons to be

23   imprisoned for a term of 188 months.  I will make a

24   recommendation that you participate in the 500-hour residential

25   drug abuse program.

PDF created with pdfFactory trial version www.pdffactory.com

1          Upon your release from imprisonment, you'll be

2    placed on supervised release for a term of five years.

3          Within 72 hours of release from the custody of the

4    Bureau of Prisons, you will report in person to the district in

5    which you are released.

6          While you are on supervised release, you will

7    comply with the following terms and conditions:  You will not

8    commit another federal, state, or local crime; and you will not

9    possess an illegal controlled substance.

10         You will refrain from the unlawful use of a

11   controlled substance.

12         You will submit to one drug test within 15 days of

13   your release and at least two periodic drug tests thereafter,

14   not to exceed 104 tests a year.

15         You will submit to the collection of a DNA sample

16   as directed by the probation officer.

17         You will comply with the standard conditions as set

18   forth in the guidelines.

19         You are prohibited from possessing a firearm or

20   other destructive device or other dangerous weapon.

21         You are to meet with -- there's a child support

22   order -- there's an indication that you are in arrears of

23   $26,000 in child support.  You are to meet with the Department

24   of Revenue within the first 60 days of your supervision to

25   determine the amount of child support for which you are in

PDF created with pdfFactory trial version www.pdffactory.com

1    arrears and make arrangements to pay that child support.

2    You are prohibited in incurring new credit charges

3    or opening additional lines of credit without the approval of

4    the probation office while any financial obligation remains

5    outstanding.

6    You are not to consume any alcoholic beverages

7    while on supervised release, and you are to participate in a

8    program for substance abuse counselling as directed by the

9    probation office, that may include testing not to exceed 104

10   tests a year.  And you are to participate, to the extent that

11   you can do so yourself or through third-party payment, in the

12   cost of that program.

13   You will pay the United States a special assessment

14   of $100, due immediately.

15   I do not impose a fine on the ground that the

16   information available to me shows that you do not have the

17   capacity to pay a fine, particularly since I'm requiring a

18   workout of this child support arrangement.  These will

19   obviously be back payments, because after this sentence, I

20   suppose there won't be immediate need for child support at this

21   time.  How old is this child?

22   THE DEFENDANT:  Nineteen.

23   THE COURT:  Your child is now 19 years old?

24   So these are back payments.

25   All right.  My order stands for these back

PDF created with pdfFactory trial version www.pdffactory.com

1    payments.

2              Are there any questions?

3              Let me advise you, Mr. Howell, that you can appeal

4    your conviction if you believe that your plea of guilty was not

5    knowingly or voluntarily made, if you think there was some

6    fundamental defect in these proceedings not waived by your

7    guilty plea.  You may also appeal the sentence I've imposed on

8    you if you believe the sentence I've imposed is contrary to

9    law.

10             You begin the process of appealing by filing a

11   notice of appeal.  But any notice of appeal that you wish to

12   file must be filed within ten days of judgment being entered in

13   your case.

14             If you want to appeal and you want to file a notice

15   of appeal but you cannot pay the fee for filing the notice of

16   appeal, you should let the clerk of this court know that and

17   the clerk of court will prepare and file a notice of appeal on

18   your behalf.

19             Is there anything further?

20             MR. UNDERHILL:  No, your Honor.

21             MR. HEINRICH:  No, your Honor.

22             THE COURT:  We are adjourned.  Thank you very much.

23             (Court adjourned at 3:05 p.m.)

24                    - - - - - - -

25

```
 1                         CERTIFICATION

 2            I certify that the foregoing is a correct

 3    transcript of the record of proceedings in the above-entitled

 4    matter to the best of my skill and ability.

 5

 6

 7

 8    /s/ Debra M. Joyce_____    _____

 9    Debra M. Joyce,  RMR, CRR            Date
      Official Court Reporter
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```